**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FILED
United States Court of Appeals
Tenth Circuit

**April 4, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TERRENCE JAMAL SHAW,

    Defendant - Appellant.

No. 23-6060
(D.C. No. 5:22-CR-00013-PRW-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.
_____

Terrence Jamal Shaw pled guilty to possessing, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). The district court sentenced him to 15 years in prison, more than the 10-year statutory minimum advised by the United States Sentencing Guidelines. Mr. Shaw appeals, challenging the substantive reasonableness of his sentence. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.  Background

On the night of July 26–27, 2021, Mr. Shaw approached a Little Caesar's Pizza restaurant in Bethany, Oklahoma, wearing a robe and a gas mask.  Mr. Shaw motioned to an employee inside, indicating he wanted to use the phone.  After the employee did not let him in, Mr. Shaw shot the front door with a gun, shattering the glass.  He entered the restaurant carrying a long gun and told the employee to give him all the money.  She filled a bag with money from the restaurant's safe and gave it to Mr. Shaw.  He left, dropping a trail of cash which officers later followed to his nearby apartment.

Mr. Shaw was indicted for one count of Hobbs Act Robbery, 18 U.S.C. § 1951(a), and one count of discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).[1]  Pursuant to a plea agreement, the Hobbs Act charge was dismissed, and Mr. Shaw pled guilty to the § 924(c) charge.  He waived most rights to appeal but preserved his right to appeal the substantive reasonableness of his sentence if it exceeded the Guidelines sentence.

A presentence investigation report (PSR) summarized that Mr. Shaw had 17 prior adjudications and convictions, with a criminal history score of 11, placing him in criminal history category V under the Guidelines.  However, the criminal history

---

[1] "The Hobbs Act makes it a federal crime to commit, attempt to commit, or conspire to commit a robbery with an interstate component.  Meanwhile, § 924(c) authorizes enhanced punishments for those who use a firearm in connection with a crime of violence." *United States v. Taylor*, 596 U.S. 845, 848 (2022) (citation and internal quotation marks omitted).

calculation did not affect his Guidelines sentence, which was equal to the statutory minimum of 10 years. *See* 18 U.S.C. § 924(c)(1)(A)(iii); United States Sentencing Commission, *Guidelines Manual*, § 2K2.4(b) (Nov. 2021). In a written memorandum, Mr. Shaw argued for the 10-year Guidelines sentence. He emphasized that he had been abused by gang members as a child after witnessing illegal activity, then was shot in the stomach as a teenager, resulting in multiple surgeries and ongoing health problems. He also emphasized having a fatherly relationship with the adult daughters of his former girlfriend, one of whom then lived with Mr. Shaw's mother. The government moved for an upward variance, and the district court gave notice it was considering an upward departure.

At sentencing, on April 6, 2023, the district court adopted the PSR with no objections. The restaurant employee testified about the impacts the robbery had on her, including that she had to quit her job because of fear and anxiety and lost her insurance as a result. The restaurant's operations director also testified, describing the rarity of having a gun discharged during a robbery and the negative effects on the business. Mr. Shaw declined to make a statement.

Before hearing argument, the district judge reiterated that he was considering both an upward departure and an upward variance based on Mr. Shaw's criminal history, and focused on that concern, stating in part:

> [T]his is one of the worst criminal histories I've seen in terms of just volume . . . of interactions with the police but, not only that, of—from a very young age sort of the types of crimes where it appears like he just targets what I'd call 'very innocent victims,' . . . random victims, with these types of crimes.

3

So . . . I'm really concerned about, you know, protecting the public, and incapacitation and things like that are at the forefront of my mind. So . . . that's what I'm . . . thinking about and am most concerned about in this case.

R. vol. 3, at 15–16. Mr. Shaw's counsel maintained the request for a guidelines sentence, arguing his criminal history was accounted for by the Guidelines.[2] The government asked for a sentence of 20 years.

The district judge imposed a prison term of 15 years, followed by 5 years' supervised release. He indicated he had considered the factors set by 18 U.S.C. § 3553(a). He explained his reasons for giving particular weight to Mr. Shaw's criminal history, noting "the length of the criminal history, how early it started," and that "there's been a trend towards . . . having guns and using guns in crimes and . . . an escalation in a way that is gravely concerning . . . when I think about protecting the public." R. vol. 3, at 27. The judge also addressed "the nature and circumstances of this offense," noting Mr. Shaw had victimized "a random business and a random victim in order to make some quick cash." *Id.* Further, the judge stated "it's not a one-off. It's . . . a trend . . . and I can see no evidence that you have any desire or intent to ever be a contributing member of society, and so I have to think long and hard about protecting the public . . . ." *Id.* at 28. In sum, the district judge found "ample justification for either an upward variance or a departure," and that "both are

---

[2] At sentencing Mr. Shaw's counsel also asked the court to take into consideration the fact that Mr. Shaw was then also facing an additional mandatory minimum sentence of 20 years for Oklahoma state charges. On appeal, Mr. Shaw does not argue any error related to consideration of the state court sentencing.

justified." *Id.* at 30. The district court indicated its above-Guidelines sentence was imposed using both a departure pursuant to Application Note 2(B) to USSG § 2K2.4, based on Mr. Shaw's criminal history and the seriousness of the offense, and also an upward variance.

## II. Discussion

Substantive reasonableness "addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."[3] *United States v. McCrary*, 43 F.4th 1239, 1244 (10th Cir. 2022) (internal quotation marks omitted). We "review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). This review is "highly deferential." *McCrary*, 43 F.4th at 1249. "We will reverse only if the sentence imposed was arbitrary, capricious, whimsical, or manifestly unreasonable, or if the district court exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *Id.* (internal quotation marks omitted).

---

[3] Section 3553(a) "requires district courts to consider seven factors in sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) just punishment (retribution), (b) deterrence, (c) incapacitation, and (d) rehabilitation, (3) the kinds of sentences available; (4) the Sentencing Commission Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need for restitution." *United States v. Cookson*, 922 F.3d 1079, 1092 (10th Cir. 2019) (citations and internal quotation marks omitted).

On appellate review, we "do not reweigh the § 3553 sentencing factors but instead ask whether the sentence fell within the range of rationally available choices that facts and the law at issue can fairly support." *Id.* (brackets and internal quotation marks omitted). "[T]he district court need not afford equal weight to each § 3553(a) factor, and we will defer on substantive-reasonableness review not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." *United States v. Cookson*, 922 F.3d 1079, 1094 (10th Cir. 2019) (citations and internal quotation marks omitted).

On appeal, Mr. Shaw argues the district court failed to consider mitigating facts, including his relationship with his ex-girlfriend's daughters and his physical and mental health challenges, many of which stem from the gunshot he suffered as a teenager. He also argues the district court overstated the seriousness of his criminal history, which he acknowledges is "fairly extensive," but characterizes as "[f]or the most part . . . comprised of relatively minor offenses . . . ." Aplt. Opening Br. at 8.

In short, Mr. Shaw argues the district court should have given less weight to his criminal history and more weight to other factors. But our review does not encompass such de novo reweighing of the facts and the § 3553(a) factors. *See McCrary*, 43 F.4th at 1249. Mr. Shaw criticizes the district court for not mentioning the facts he now emphasizes as mitigating. However, the district court was not required to give equal weight to all factors, and we defer to its determination of the weight given to each. *See Cookson*, 922 F.3d at 1094. "[N]o algorithm exists that instructs the district judge how to combine the factors or what weight to put on each

6

one." *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018).  Moreover, although Mr. Shaw included these facts in his sentencing memorandum, neither he nor his counsel raised them at the sentencing hearing.  The district court did not abuse its discretion when it also did not address them.[4]

Mr. Shaw also objects to the sentencing judge describing his criminal history as "one of the worst . . . I've seen in terms of just volume . . . ."  R. Vol. 3, at 15.  We conclude the district court adequately explained its concerns not only with the length of Mr. Shaw's criminal history and number of prior convictions, but also the nature of the current offense, the types of past crimes, the apparent trend towards use of firearms, and a pattern of targeting innocent victims.  It also weighed those concerns in connection with the need to protect the public.  We see no abuse of discretion in the district court's determination that Mr. Shaw's criminal history warranted imposition of an above-Guidelines sentence.  *See Barnes*, 890 F.3d at 921 (noting district courts have broad discretion to consider particular facts in sentencing); *United States v. Garcia*, 946 F.3d 1191, 1214 (10th Cir. 2020) (stating that where Guidelines' criminal history computation does not "fully reflect the seriousness of an offender's criminal background," then "action to elevate sentences above the . . . Guidelines range may be appropriate").

---

[4] Mr. Shaw challenges only the substantive reasonableness of his sentence.  He does not argue the district court committed any procedural error or that its sentence was procedurally unreasonable.  *See McCrary*, 43 F.4th at 1244 (distinguishing procedural reasonableness from substantive reasonableness).

In sum, Mr. Shaw has not shown that the sentence selected by the district court was "arbitrary, capricious, whimsical, or manifestly unreasonable," or "exceeded the bounds of permissible choice." *McCrary*, 43 F.4th at 1249 (internal quotation marks omitted). We therefore hold the district court did not abuse its discretion in imposing Mr. Shaw's sentence.

### III. Conclusion

Mr. Shaw has not shown the sentence imposed by the district court was substantively unreasonable. We therefore affirm the district court's judgment.

Entered for the Court

Allison H. Eid
Circuit Judge